UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHARLOTTE ESTEP,

                Plaintiff,

v.                                          Case No.  5:04-cv-471-Oc-GRJ

JO ANNE BARNHART, Commissioner of
Social Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income benefits.  (Doc. 1.)  The Commissioner has answered (Doc. 4) and both parties have filed briefs outlining their respective positions.  (Docs. 13 & 14.)  For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. §405(g).

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income benefits on May 2, 2001, claiming a disability onset date of November 25, 2000. (R. 46-49.) Plaintiff's application was denied initially (R. 42-43), and upon reconsideration. (R. 37-39.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 36.)  The ALJ conducted Plaintiff's administrative hearing on August 19, 2003 (R. 392-447) and issued a decision unfavorable to Plaintiff on October 10, 2003 (R. 8-18.)

The Appeals Council denied Plaintiff's request for review. (R. 3-6.)  Plaintiff then appealed to this Court.

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] <u>See</u> 42 U.S.C. § 405(g).

[2] <u>See</u> <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); <em>accord,</em> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] <u>See</u> <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] <u>See</u> <u>Foote</u>, 67 F.3d at 1560; <em>accord,</em> <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her

---

[5] See Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] See 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] See 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] See 20 C.F.R. § 404.1520(b).

[10] See 20 C.F.R. § 404.1520(c).

[11] See 20 C.F.R. § 404.1520(d).

[12] See 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

_____

[13] See 20 C.F.R. § 404.1520(f).

[14] See Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See Also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] See Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (internal citations omitted).

[16] See Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] See Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] See Walker at 1003.

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. <u>SUMMARY OF THE RECORD EVIDENCE</u>

Plaintiff was born on October 12, 1961 and was forty-three (43) years old when the ALJ issued his decision.  (R. 9, 50, 111.)  Plaintiff completed the eleventh grade. (R. 119.)  She has worked as a cashier, stocker, cleaner and laundry worker.  (R. 100, 114, 144).  Plaintiff contends that she has been unable to work since November 25, 2000 when she was injured in a motor vehicle accident. (R. 128.)

On November 25, 2000, Plaintiff was taken to the emergency room following a motor vehicle accident. (R. 155-178.)  Plaintiff was diagnosed with a neck and lumbar sprain and cervical spine x-rays showed degenerative disc disease at the C5-6 level. (R. 157, 176-82.) Plaintiff returned to the emergency room three days later due to ongoing pain. (R. 149-54.)

Plaintiff began treatment with Charles Grudem, M.D. on December 12, 2000.  Dr. Grudem diagnosed Plaintiff with cervical and lumbar sprain and headaches  (R. 344-

---

[19] See <u>Wolfe</u> at 1077-78.

[20] See <u>id</u>.

[21] See <u>Doughty</u> at 1278 n.2.

46.)  On examination, Plaintiff's right straight leg raise was positive for low back pain and buttock, thigh and lower leg symptoms. (R. 345.)  Plaintiff leg straight leg raise was positive for low back pain. (*Id.*)

On December 19, 2000, Plaintiff had an MRI of her cervical and lumbar spine. (R. 374-77.)  The cervical spine MRI showed a central and right paracentral disk protrusion at C4-5, which extended rightward and narrowed the exiting neural foramen. It further showed that Plaintiff had broad based disc protrusion, which was mild at C5-6 and C6-7 and degenerative bone changes at C4-5, C5-6 and C6-7 and additional degenerative changes at the C1-2 level which were "more prominent than usually appreciated" and "either due to osteoarthritis or ... some changes due to rheumatoid disease." (R. 376.)  On January 10, 2001, Plaintiff had an MRI of her thoracic spine which showed disc degeneration at T8-9. (R. 373.)

On January 8, 2001, Plaintiff reported severe headaches, left arm numbness, tingling in her left leg and foot, back and neck pain and was examined by Dr. Grudem. (R. 332-34.)  On February 5, 2001, Plaintiff saw Dr. Grudem for follow-up.  (R. 318-28.) Plaintiff reported low back pain that radiated to her left hip and leg.  (R. 320.) She further reported that her left leg occasionally becomes shaky and weak and gave way and that she had tremors throughout her body and numbness and tingling in the left leg, arm and hand.  (*Id.*)  On examination, Dr. Grudem noted tenderness in Plaintiff's cervical spine at C3-6 midline, increased tone bilaterally in the paraspinals, trapezius, rhomboids, and levator scapulae muscles,  muscle spasms throughout, diminished range of motion in the cervical and lumbar spine, tenderness in the lumbar spine from L2-S1.  (*Id.*)  Dr. Grudem further noted that Plaintiff's sitting straight leg raising test was

positive on the left for low back and posterior thigh pain that increased with dorsiflexion. (*Id.*) Dr. Grudem noted that Plaintiff was using a soft neck collar and a cane for ambulation.  (R. 320.)   Dr. Grudem referred Plaintiff to Dr. Violet Poetter for chronic pain management and Dr. John Stevenson for surgical evaluation.  (R. 318-20.)  On February 7, 2001, Plaintiff had a CT scan of the cervical spine which showed probable degenerative disc disease at C5-6. (R. 370.)

On February 26, 2001, John C. Stevenson, M.D. conducted a neurosurgical consultation.  (R. 194-202.)  Dr. Stevenson observed that Plaintiff went from a seated to a standing position with difficulty, her shoulder motion was restricted bilaterally and that she had guarded movement in flexion.  (R. 196.)  He further noted that Plaintiff had a positive straight leg raising on the right at 90 with pain, on the left at 30 with pain and a sensory deficit in the lumbar area on the left at L-5.  (R. 197.)  Based on his examination and review of records, Dr. Stevenson diagnosed Plaintiff with myoligamentous injury of the cervical and lumbar spine, cervical degenerative disc disease of C4-C5, C5-C6, and C6-C7, hypertension and status post a stroke in 1992.  (R. 198.)  Dr. Stevenson did not recommend any surgery, but suggested that Plaintiff undergo physical therapy and continue with pain management treatment with Dr. Grudem.  (*Id.*)

On February 28, 2001, Dr. Grudem re-examined Plaintiff.  (R. 311-13.)  Dr. Grudem noted that Plaintiff had a "markedly antalgic gait",  was using a cane for ambulation and was wearing a soft cervical collar.   (R. 311-12.)  Dr. Grudem noted that Plaintiff had increased burning type pain in the left upper and both lower extremities, increased neck pain with C6 radiculitis, and increased lower back pain. (R. 311.)   On examination, Dr. Grudem found that Plaintiff's cervical spine was tender from C4-C7 in

7

the midline with markedly increased tone in the paraspinal area with muscle spasms and her lumbar spine was tnder from L3-S1 with increased tone and decreased range of motion. (*Id.*)  He further noted that Plaintiff had numbness and tingling in her hands and decreased left C6-C7 sensory. (*Id.*)

On March 22, 2001, Plaintiff was re-examined by Dr. Grudem. (R. 300-01.) Plaintiff's chief complaint was increased neck and low back pain.   (R. 300-01.)  Dr. Grudem noted that Plaintiff was having difficulty filling prescriptions due to finances but that she did not think they were helping very much anyway.  (R. 300.)  On examination, Dr. Grudem found that her cervical spine was tender at C2-C6 in the trapezius muscles and that her range of motion was diminished.  (*Id.*)  Dr. Grudem further found that Plaintiff's thoracic spine was tender in the rhomboids and her lumbar spine was tender at L2-S1.  (*Id.*)  Dr. Grudem noted that Plaintiff was using a soft neck collar and that her gait was slow and antalgic and that she was using a cane for ambulation.(*Id.*)

On March 26, 2001, Violet Poetter, Psy.D. performed a psychological evaluation. (R. 266-69.)   Dr. Poetter concluded that despite Plaintiff's complaints of sleep deprivation, difficulty becoming comfortable and passive suicidal ideation, she found "no objective test data to support her reported levels of depression." (R. 269.)   Dr. Poetter found Plaintiff's memory to be impaired and her cognitive skills (though not tested) to be below average. (*Id.*)  Dr. Poetter diagnosed a pain disorder associated with both psychological factors and a general medical condition.  (*Id.*)

On April 11, 2000 and April 13, 2001, Plaintiff was seen for a follow-up by doctors in Dr. Poetter's office -- Rodney A. Poetter, Ph.D. and Linda S. Bajarski, Psy.D.  (R. 264-65.)  Two different visual and auditory tests were administered.  (R. 264.)  Plaintiff

scored extremely poorly on the Prudence scale for both auditory and visual stimuli.  (*Id.*)
In addition, Plaintiff's EEG results suggested a significant level of underlying muscular
tension and some difficulty with attention and concentration.  (*Id.*)

On April 19, 2001, Plaintiff was re-examined by Dr. Grudem.  (R. 296-97.)  Dr.
Grudem noted that Plaintiff was using a cane for ambulation and that her gait was
antalgic. (R. 296.)  On examination, Dr. Grudem noted that Plaintiff had cervical and
lumbar tenderness and increased tone bilaterally throughout the paraspinals.  (*Id.*)  Dr.
Grudem opined that Plaintiff's neck and shoulder pain would "likely disable her until
surgery is done"  (*Id.*)  and that she should permanently refrain from any physical
exertion or exposure to the work environment.  (R. 295.)

On May 1, 2001, in a letter to the Office of Social Security Disability
Determination, Dr. Grudem noted that as a result of the "serious" motor vehicle accident
Plaintiff has a "very significant" neck injury with disc herniations and nerve and/or spinal
cord compression-contact with related arm symptoms and very prominent muscle
spasms and trigger points in the neck and neck/shoulder areas and sprains to her mid
and lower back.  (R. 294.)  Dr. Grudem further noted that Plaintiff has a significant pre-
existing learning disability and low educational level.  (*Id.*)  Dr. Grudem opined that
Plaintiff was both temporarily and permanently disabled from all gainful employment due
to "severe chronic pain and marked physical limitations on arm use, head and neck
posture and sitting and standing intolerances" which was compounded by her
preexisting conditions. (*Id.*)

On June 5, 2001, Harry L. Collins, Jr., M.D., a non-examining state agency
physician, performed a physical residual function capacity ("RFC") assessment. (R. 218-

25).  Based on his review of the medical records, Collins concluded that Plaintiff could occasionally lift/carry up to 10 pounds, frequently lift/carry less than 10 pounds, walk/stand for at least 2 hours in an 8-hour workday, sit for about 6 hours in an 8 hour workday and push and/or pull without limitation.  However, Collins found that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch and crawl, that she should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes/odors/dust/gases and that she should avoid even moderate exposure to hazards.  (R. 220-22.)  Collins noted that the opinions of Plaintiff's treating or examining doctors regarding Plaintiff's incapacities are based on "subjective complaints without substantial evidence of objective impairments."  (R. 224-25.)

On June 4, 2001, Michael H. Zelenka, Ph.D., a non-examining state agency physician, conducted a psychological evaluation.  (R. 203-17.)  Zelenka opined that Plaintiff's organic mental and somatoform disorders result in only mild difficulties in maintaining concentration, persistence, or pace.  (R. 213.)

On November 12, 2001, Plaintiff was examined by Dr. Grudem.  (R. 292-93.) Plaintiff reported that she had not been able to keep regular appointments due to financial reasons.  (R. 292.) Plaintiff reported left hip pain and give way, daily headaches, and that her shoulders were "killing her."  (*Id.*)  On examination, Plaintiff cervical spine was tender and her lumbar spine muscle tone was increased and irritable.  (*Id.*)  Dr. Grudem noted that Plaintiff's grip strength was very weak and that her shoulder range of motion elicited grimacing and pain behavior.  (*Id.*)  He further noted that Plaintiff's sitting straight leg raising test on the left caused low lateral thigh pain. (*Id.*)

10

On November 21, 2001, Gary Honickman, Ph.D., evaluated Plaintiff at the request of the Office of Disability Determinations. (R. 226-28.)  Dr. Honickman noted that Plaintiff walked very slowly with a cane and was obviously in physical discomfort. (R. 226.)  Dr. Honickman administered the Wechsler Memory Scale and reported that Plaintiff obtained a memory quotient of 60 which suggests that she functions within the mildly retarded range in terms of memory ability.  (R. 227.)  Plaintiff reported to Dr. Honickman that she has experienced suicidal ideation, that she is depressed, that she has been hearing voices and that she has seen an angel.  (*Id.*)  Dr. Honickman diagnosed Plaintiff with Pain Disorder associated with both a general medical condition and psychological features, and a Major Depression with Psychotic features.  (*Id.*)

On December 6, 2001, Steven L. Wise, Psy.D., a state agency non-examining doctor, conducted a psychological evaluation.  (R. 229-246.)  Based on his review of the medical records, Wise found mild restriction of activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace.   (R. 243.)  Wise further found that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions; but not significantly limited in her ability to understand, remember and carry out very short and simple instructions.  (*Id.*)  Wise also concluded that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 244.)

On January 2, 2002,  Edward L. Demmi, M.D. performed a consultative evaluation. (R. 247-51.) Plaintiff reported severe headaches lasting approximately two

days in length, accompanied by blurry vision, nausea and vomiting.  (R. 247.)  Dr.

Demmi noted that Plaintiff's gait was "minimally antalgic" and that although she

ambulated with a cane, Dr. Demmi did not find it to be "medically necessary."  (R. 250.)

During the examination, Plaintiff refused to bend at the waist due to pain and discomfort

however, Dr. Demmi noted that while Plaintiff was talking and discussing her history,

she exhibited at least 10 degrees of flexion.  (*Id.*)  Plaintiff's straight and seated leg

raises were normal.  (R. 250-51.)  Dr. Demmi diagnosed Plaintiff with chronic low back

pain and neck pain, headaches per history, chest pain status post two myocardial

infarctions, and history of hypertension.  (*Id.*)

On July 25, 2002, Gary Weiss, MD conducted a neurologic evaluation of Plaintiff.

(R. 279-82.)  Dr. Weiss noted that Plaintiff's gait was antalgic, that she took small steps

with imbalance and that she uses a cane.  (R. 281.)  Dr. Weiss further noted that

Plaintiff's cervical and lumbar spine motions were decreased in all directions with

paraspinal muscle spasms and tenderness and thoracic muscle spasms and

tenderness.  (*Id.*)  Dr. Weiss' impression was that Plaintiff has severe chronic pain

syndrome with depression, herniated nucleus pulposus at C4-5, C5-6 & C6-7,

degenerative disc disease at T8-9, chronic low back pain, and post-traumatic

headaches, dizziness, and decreased memory. (R. 282.)

On May 5, 2003, Plaintiff saw Dr. Grudem complaining of blurred vision, shaking

hands and poor balance.  (R. 379.)  On examination, Plaintiff had tenderness in her

cervical and lumbar spine with increased tone and decreased range of motion.  (*Id.*) Dr.

Grudem noted that Plaintiff's balance was "generally getting worse."  (R. 380.)  On May

22, 2003, Dr. Grudem referred Plaintiff for an MRI scan of the brain, which was

unremarkable.  (R.  384-85.)  On July 2, 2003, Plaintiff had a follow-up visit with Dr.

Grudem.  (R. 385-87).  Plaintiff reported neck pain radiating to her upper extremities,

low back pain radiating to her lower extremities, headaches, and "changes in her level

of consciousness" when a severe headache is present.  (R. 385.)

At the hearing on August 19, 2003, Plaintiff testified that she uses a cane and

that she can only stand for five to ten minutes without the cane because she gets dizzy,

lightheaded and she cannot walk.  (R. 436.)  Plaintiff testified that she cannot stand or

sit for very long.  (R. 434.)   Plaintiff testified that she has had headaches constantly

since her automobile accident and that nothing makes the headaches feel better.  (R.

434-36.)  Plaintiff testified that she has constant shoulder pain, numbness and swelling

of her face, lower back pain, neck pain, numbness in her legs, swelling in her legs and

feet and sharp pains going down to her feet.  (R. 437-41.)

The ALJ determined that Plaintiff has cervical and thoracic spine degenerative

disc disease, headaches, hypertension, depression, and a pain disorder associated with

both a general medical condition and psychological features.  (R. 14.)  The ALJ

determined that, while these impairments were severe, Plaintiff did not have an

impairment or combination of impairments which met or medically equaled one of the

impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.  (*Id.*)

The ALJ then determined that Plaintiff retained the physical RFC to sit for about

six hours in an eight-hour workday, walk/stand for up to two hours per day, and

occaionslly climb, balance, stoop, kneel, crouch, crawl, and lift up to 10 pounds.

Additionally, Plaintiff should avoid concentrated exposure to extreme heat or cold,

wetness, humidity, noise, vibration, and fumes, odors, gases or poor ventilation and she

should avoid even moderate exposure to working at heights or around machinery.  (R. 15.)  The ALJ further found that Plaintiff's nonexertional limitations restrict her to work in which she is required to understand, remember and carry out short and simple tasks generally associated with unskilled work.  (R. 15, 17.) The ALJ then found that Plaintiff could not perform her past relevant work because her past jobs all required extensive walking and standing.  (R. 16.)

The ALJ then applied Rule 201.24 of the Medical-Vocational Guidelines (the "grids")[22] and found that Plaintiff was not disabled. (R. 18.)  The ALJ did not consult a vocational expert.   In reaching his decision, the ALJ accorded little weight to Dr. Grudem's opinions regarding Plaintiff's functioning, because he found that those opinions were based on Plaintiff's subjective complaints, rather than diagnostic and clinical findings. (R. 15.)

## IV.  DISCUSSION

### A.    The ALJ Failed To Articulate Adequate Reasons
For Discrediting The Opinion Of Plaintiff's Treating Physician

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[23]  If a treating physician's opinion on the nature and severity of a

---

[22] 20 CFR Pt. 404, Subpt. P. App.2 Rule 204.00.

[23] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records."). See also Edwards, 937 F.2d at 583-584; Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[24]

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[25]  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[26]

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion.[27]  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.[28]

Upon a review of the ALJ's decision, as well as an examination of the medical records at issue, the Court determines that the ALJ failed to properly consider the

---

[24] 20 C.F.R. § 404.1527(d)(2).

[25] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[26] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

[27] 20 C.F.R. § 404.1527(d).

[28] Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); see also 20 C.F.R. § 404.1527(d)(2).

opinion of Dr. Grudem as a treating physician.  The ALJ did not articulate good cause

for discounting Dr. Grudem's May 2001 assessment that the claimant was permanently

disabled.  Moreover, the ALJ improperly credited the opinion of Dr. Demmi, who

performed a consultative examination, over the opinion of Dr. Grudem regarding

Plaintiff's functional limitations.

The ALJ explicitly stated that Dr. Grudem's assessment that Plaintiff was

permanently disabled was "accorded lesser weight" than the opinion of Dr. Collins, the

non-examining state agency physician regarding Plaintiff's functional limitations (R.

254.)  The ALJ stated that Dr. Collins "specifically addressed Dr. Grudem's May 2001

assessment in which he indicated that the claimant is permanently disabled.  The State

Agency physician[ ] concluded that the 'alleged incapacities are due to subjective

complaints without substantial evidence of objective impairments.'" The ALJ agreed with

Dr. Collins' conclusions regarding Plaintiff's functional limitations because "Dr. Grudem

relied on subjective complaints rather than his diagnostic and clinical findings." (R. 15.)

In his May 1, 2001 letter to the Office of Social Security Disability Determination,

Dr. Grudem opined that Plaintiff was temporarily and permanently disabled from all

gainful employment due to "severe chronic pain and marked physical limitations on arm

use, head and neck posture, and sitting and standing intolerances" which are

"compounded by [ ] prior conditions." (R. 294.) Specifically, Dr. Grudem noted that

Plaintiff:

> has a very significant neck injury with disc herniations and nerve and/or
> spinal cord compression contact with related arm symptoms and very
> prominent muscle spasms and trigger points in the neck and
> neck/shoulder areas.  She also sustained sprains of her lower and mid

back regions.  In addition . . . she has a significant pre-existing learning
disability and low educational level.

*Id.*

Dr. Grudem expressly stated that his findings were "confirmed on physical

examinations, and MR [sic] Scans and psychologist evaluation (regarding learning

disability)."  (*Id.*)   The records show that Dr. Grudem examined Plaintiff on at least six

occasions prior to May 2001.  As discussed above, based on his repeated examinations

of Plaintiff, Dr. Grudem found lumbar and cervical spine tenderness and diminished

range of motion (R. 296, 300, 311, 320), increased tone in the paraspinals, trapezius,

rhomboids and levator scapulae muscles (R. 296, 300, 311, 320), muscle spasms (R.

311, 320), positive straight leg raising tests (R. 320, 345) and decreased neurological

sensory.  (R. 311.)  Additionally,  Dr. Grudem consistently noted that Plaintiff was using

a cane for ambulation and that her gait was slow and antalgic. (R. 296, 300, 311-12,

320.)  During this period, Dr. Grudem ordered an MRI of Plaintiff's cervical and lumbar

spine and a CT scan of her cervical spine which showed degenerative changes.  (R.

370, 374-77.)  Dr. Grudem also referred Plaintiff to Dr. John Stevenson for a

neurosurgical consultation and Dr. Violet Poetter for a psychological evaluation.

In sum, Dr. Grudem's May 1, 2001 opinion that Plaintiff was permanently

disabled from all gainful employment due to "severe chronic pain and marked physical

limitations on arm use, head and neck posture, and sitting and standing intolerances"

which is "compounded by [ ] prior conditions" (R. 294) is supported by his diagnostic

and clinical findings and those of Dr. Stevenson and Dr. Poetter.  Accordingly, the ALJ's

articulated reason for discounting Dr. Grudem's opinion (and according greater weight

to a non-examining State Agency physician) is not supported by substantial evidence.

In addition, the ALJ improperly relied on the Dr. Demmi's findings -- "a negative straight leg raising test, no neurological deficits, normal grip strength and fine manipulation and a minimally antalgic gait with no need for a cane" -- without even considering the contrary findings of Plaintiff's treating physician, Dr. Grudem.   During his numerous examinations, Dr. Grudem found positive straight leg raising tests, (R. 292, 320, 345), neurological deficits (R. 311), weak grip strength (R. 292), "markedly antalgic gait" (311) and balance that was "generally getting worse." (R. 380.)   Nor did the ALJ consider the findings of the other examining physicians (i.e., Dr. Stevenson and Dr. Weiss).[29]  This error is even more significant where, as here, Dr. Demmi examined Plaintiff in January 2002 and the record includes medical records through July 2003.

Because the ALJ failed to articulate specific reasons supported by substantial evidence for his decision to discount the opinions of Dr. Grudem this matter is due to be remanded to the Commissioner for proper consideration of Dr. Grudem's opinions as a treating physician.  On remand, the Commissioner should give substantial or considerable weight to Dr. Grudem's opinions or in the event the ALJ chooses to reject Dr. Grudem's opinions, the ALJ must articulate specific reasons based on substantial evidence for giving lesser weight to his opinions, in accordance with the law of the Eleventh Circuit.

---

[29] Dr. Stevenson noted that Plaintiff had positive straight leg raising tests and a sensory deficit in the lumbar area on the left at L-5.  (R. 197.)  Dr. Weiss found that Plaintiff's cervical and lumbar spine motions were decreased in all directions with paraspinal muscle spasms and tenderness and thoracic muscle spasms and tenderness.  (R. 281.)  Dr. Weiss further noted that Plaintiff's gait was antalgic and that she took small steps with imbalance.  (*Id.*)

**B.    The ALJ Erred By Applying The Grids Without
         Obtaining Expert Vocational Testimony**

Because the ALJ determined that Plaintiff could not perform her past relevant work, the burden of proof shifted to the Commissioner to establish that Plaintiff could perform other work that exists in the national economy.[30]  The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony.[31]  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.[32]

In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.[33] This burden may sometimes be met through exclusive reliance on the "grids" when each variable on the appropriate grid accurately describes the claimant's situation.[34] However, exclusive reliance on the grids is not appropriate either when the claimant is

---

[30] See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

[31] See id.

[32] See id.

[33] See Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).

[34] See Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills.[35]

Here, instead of requiring the testimony of a vocational expert to assess the impact of Plaintiff's nonexertional impairments (i.e., environmental limitations and limitation to performing short and simple tasks), the ALJ relied solely on the grids to determine that Plaintiff was not disabled.  This was based on the ALJ's conclusory finding that Plaintiff's capacity to perform sedentary work had not been "compromised by any significant nonexertional limitations."  (R. 18.).  However, in reaching this conclusion the ALJ failed to discuss (or even mention) what impact Plaintiff's nonexertional limitations would have on the sedentary occupational base.

In his RFC analysis, the ALJ found that Plaintiff's nonexertional limitations restricted her to short and simple tasks generally associated with unskilled work.  (R. 17.)  However, the Commissioner's own list of unskilled sedentary jobs shows that many of these jobs require more than the mental capacity to follow simple instructions.[36] For each job described, the Dictionary of Occupational Titles specifies the requisite reasoning capabilities.[37] By way of example, a job rated "reasoning development level 1" requires the ability to understand and carry out simple instructions, while a job rated "reasoning development level 2" requires the ability to understand and carry out detailed

---

[35] See id. at 1002-03.

[36] See Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997)(reaching the same conclusion).

[37] 2 U.S. Dep't of Labor, Dictionary of Occupational Titles, 1010-11 (4th ed. 1991).

instructions.[38]  Many of the jobs listed in the unskilled sedentary job category require level 2 reasoning or higher.[39]  Thus, that Plaintiff is limited to short and simple tasks appears to have an impact on her ability to perform the full range of sedentary work. Moreover, the ALJ did not consider what impact Plaintiff's environmental limitations would have on the sedentary occupational base.  Pursuant to Social Security Ruling 96-9p,[40] restrictions on the ability to work in a noisy environment and to avoid exposure to odors or dust must be evaluated on an individual basis. Accordingly, this matter is due to be remanded for the ALJ to reconsider, with vocational expert testimony, whether Plaintiff can perform other work which exists in the national economy.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner, for an Administrative Law Judge to: (1) properly consider the opinion of Dr. Grudem; (2) reconsider, with vocational expert testimony, whether Plaintiff can perform other work which exists in the national economy; and (3) conduct any additional

---

[38] See id., Appendix C (describing the six levels of reasoning development).

[39] See Lucy, 113 F.3d at 909; see also Doc. 13, Exhibit B (listing 91 unskilled sedentary occupations that require a reasoning development level greater than 1; plaintiff generated the list through a Westlaw search of the occupations contained in the Dictionary of Occupational Titles).

[40]  1996 WL 374185 at *9 (1996)

proceedings the Commissioner deems appropriate. The Clerk is directed to enter final judgment in favor of the Plaintiff consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on January 4, 200.

GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel

22